## BARRETT v. McCARTY et al.

The mere taking of a tax title by a tenant in common to unimproved wild land, without any exclusive residence on and occupation of it, is not such an ouster of his co tenants as will set the statute of limitations in motion.

The payment of taxes·by the devisee of a tenant in common of land, who had no such possession as to constitute adverse possession against his co-tenants, will be regarded as payment by a tenant in common for the benefit of all the co-tenants, so as not to entitle him to the benefit of Rev. Code Civ. Proc. §§ 54, 55, declaring that one shall be held to be the legal owner of land where he pays taxes on it for 10 successive years, being in the actual possession of it under claim of color of title, or having color of title merely in case the land is vacant and unoccupied.

(Opinion filed, Oct. 3, 1905.)

Appeal from Circuit Court, Turner County. Hon. E. G. SMITH, Judge.

- Action by Charles H. Barrett against Thomas McCarty and others. From a judgment for plaintiff, defendant Thomas McCarty appeals. Affirmed.

*L. L. Fleeger* and *Ryan, Merton & Newbury,* for appellant. *French & Orvis,* for respondent.

CORSON, J. This was an action to quiet title to a quarter section of land in Turner county, a one-half interest in which was claimed by the plaintiff. Findings and judgment being in favor of the plaintiff, the defendant Thomas McCarty has appealed to this court from the judgment alone. The only questions before us, therefore, are as to whether or not the court's conclusions of law are supported by the findings of fact.

The court's findings may be thus summarized: Prior to the month of February, 1872, one Sarah McCarty filed upon the quarter section of land in controversy and made final proofs, and in that month she married Dominick Dillon, and was·thereafter, and until the time of her death in February, 1873, his wife, and resided with· him in Turner county. She died intestate, leaving as her heirs Dominick- Dillon (her husband), her mother, three brothers, and two sisters, four of whom are made parties defendant in this action. On October 7, 1879, a treasurer's deed for the taxes of 1875 upon said' land was issued to Dennis McCarty, one of the heirs of Sarah Mc--

Carty Dillon, and one of the tenants in common owning said land. In June, 1891, the said Dennis McCarty died, leaving a will by which he devised the property to his brother Thomas McCarty, the appellant in this action. This will was probated in July, 1891, in the county court of the county of Waukesha, in the state of Wisconsin, but was not probated in Turner county, in this state, until subsequent to the commencement of this action, to-wit, May 17, 1902. At the time the tax deed was issued in 1879 the land was unimproved, uncultivated, and unoccupied, and in a state of nature, except a few acres thereof, which was broken by Sarah McCarty Dillon prior to her marriage and most of the land in that vicinity . was in the same condition. In 1884 or 1885 Dennis McCarty stopped people in the vicinity of said land from using it for pasturage, and which prior to that time was used for common pasture. In 1887 Dennis McCarty, the grantee in said tax deed, rented said land to people in that vicinity, and in that or the following year he caused 30 acres of said land to be broken, and at various times since and after his death the defendant Thomas McCarty has caused 40 acres more of said land to be broken. Since 1887 or 1888 the plowed land on said premises was rented each year by Dennis McCarty during his lifetime, and after his death by the appellant, to tenants who paid the rent to Dennis McCarty during his lifetime, and after his death to the appellant, Thomas McCarty. Dominick Dillon, the husband of Sarah McCarty Dillon, for more than 20 years prior to the commencement of this action lived in Clay county, S. D., about 10½ miles from the premises in controversy, and Dennis McCarty, until 1889, lived in the same county, about 3½ miles from said Dominick Dillon. Dennis McCarty claimed to own said premises from the date of said tax deed to the time of his death; but there is no evidence that he ever made such claim to any one other than his brother, the appellant herein, and Phillip McCarty. The appellant claimed to be the owner of the premises from the death of his brother Dennis to the present time. Said Dominick Dillon never made any claim of any interest in said premises or for an accounting of the rents thereof to the appellant, and the evidence .does not show whether he ever made any claim of title or for an accounting of

rents to Dennis McCarty during his lifetime. There is no evidence to show that said Dominick Dillon ever knew that said Dennis Mc-Carty or the appellant claimed title to the said land. Neither Dennis McCarty nor any parties to this action ever resided upon said land, but Dennis McCarty paid the taxes assessed upon said land from the time of the issuance of said tax deed until his death, and since his death the appellant has paid the taxes thereon. The court's findings of fact do not show at what time or times any of said taxes were paid, either by Dennis or Thomas McCarty. On the 11th day of November, 1901, Dominick Dillon, the husband of the said Sarah McCarty Dillon in her lifetime, quitclaimed his interest in said land to the plaintiff in this action for the recited consideration of $1,000. The summons in this action was served upon all of the defendants, but none of them appeared in the action, other than the appellant herein. Upon the facts found the court's conclusions of law were in favor of the plaintiff, and judgment was thereupon rendered and entered adjudging him to be the owner of an undivided one-half interest in the said land.

It will be seen that in 1872 Sarah McCarty, the sister of the appellant, entered the land in controversy; that she afterwards married Dominick Dillon, and died in 1873, leaving the said Dominick Dillon, her husband, and the other defendants named in the action, as her heirs at law. As Sarah McCarty Dillon left no children, under the laws of this state Dominick Dillon succeeded as one of her heirs to one-half of her real property, and the other half became the property of her mother and brothers and sisters. Dominick Dillon, therefore, held one-half of the property as co-tenant with the brothers and sisters. The land in controversy at that time was unfenced and unoccupied prairie land, and so remained until 1884 or 1885, except a few acres which had been plowed or cultivated prior to the latter named date. In 1879 Dennis McCarty, one of the co-tenants, obtained a tax deed for the property, and thereafter and until the time of his death paid the taxes thereon, and since his death in 1891 the appellant has paid the taxes on the said property.

It is contended by the appellant that Dennis McCarty by virtue

of his tax deed acquired title to said property adversely to Dillon, and that prior to the commencement of this suit he and his devisee, the appellant herein, had held the said property adversely to the other heirs and to said Dominick Dillon for more than 20 years, and that therefore, at the time when Dominick Dillon conveyed his interest in the property to the plaintiff, his right to the same was barred by the twenty-year statute of limitations. Appellant further contends that, as he had paid the taxes upon the property since 1891, he was entitled to be declared the owner of the same under and by virtue of section 54 of the Revised Code of Civil Procedure, which provides that every person in the actual possession of lands or tenements for 10 successive years under claim and color of title made in good faith, and who shall have paid all taxes legally assessed upon said lands, shall be adjudged to be the legal owner. Section 55 makes similar provisions as to unoccupied lands. It is contended by the respondent: (1) That Dennis McCarty, being a tenant in common with Dominick Dillon and his brothers and sisters, could not acquire any title adverse to them under the tax deed, and consequently that his claim of title under such deed did not constitute an adverse possession within the meaning of our Code; (2) that the character of his possession was not such as to constitute adverse possession as defined by our Code, and consequently that the title of Dominick Dillon was not barred by the 20-year statute of limitations; (3) that, as the will of Dennis McCarty was not admitted to probate in this state until after the commencement of this action, the appellant herein cannot claim the benefit of the provisions of sections 54 and 55 above referred to, and hence that the action was not barred by the 10-year statute of limitations.

While it is conceded by the respondent that a tenant in common may oust his co-tenants and acquire the title to the whole property by an adverse possession, the ouster must be of such a character as to notify his co-tenants that he denies their right to the property and holds the same adversely to them. Yet the mere taking of a tax deed to unimproved, wild land, without any exclusive residence upon and occupation of the same, does not constitute an ouster—such ouster as will set the statute of limitations in motion.

We are of the opinion that this contention on the part of the respondent is correct, and that there was no such an ouster in this case, or adverse possession, as would constitute a bar, under the 20-year limitation, in this action. As we have seen, up to 1884 or 1885 the land in controversy was used as a common pasture; and subsequently to that time, though portions of the land were rented, the same was neither fenced or otherwise improved. But, whether or not the adverse possession was sufficient, after the year 1884 or 1885, within the provisions of our Code defining adverse possession, it is clear that prior to that time the possession was entirely insufficient to constitute adverse possession,, and hence there was no such adverse holding by a co-tenant for a period of 20 years as would constitute a bar to the action. As Dennis McCarty had no such possession of the premises as a co-tenant as would constitute adverse possession, his devisee, the appellant in this case, acquired none, and his payment of taxes from 1891 to 1901 must be regarded as the payment of taxes by a co-tenant, and he is not, therefore, entitled to the benefits of the act of 1891. While he may be entitled to recover of his co-tenants their proper proportion of the taxes paid, over and above the amount of rents received by him, he could acquire no title as against them by the payment of the taxes. Payment of taxes and improvements made by any one co-tenant are ordinarily presumed to be made for the benefit of all the co-tenants, and the law will not permit one co-tenant ordinarily to take advantage of his possession to acquire title or cut off the rights of his co-tenants. How far the rights of the appellant were affected by his failure to have the will of his brother probated in this state prior to the commencement of the action, it is not now necessary to decide, as we are clearly of the opinion that, had it been probated at the proper time, he could have acquired no new rights as against his co-tenants.

These facts lead to an affirmance of the judgment, and the same is affirmed.